UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INNOVATIVE SPORTS MANAGEMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> ZENON HUAMAN, individually and d/b/a JESS'S PLACE, <br><br> Defendant. | Case No. 22-cv-05796-VKD <br><br> **ORDER FOR REASSIGNMENT TO A DISTRICT JUDGE** <br><br> **REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT** <br><br> Re: Dkt. No. 12 |

Plaintiff Innovative Sports Management, doing business as Integrated Sports Media ("ISM") filed this action against Zenon Huaman, individually and doing business as Jess's Place. ISM claims that Mr. Huaman unlawfully intercepted and showed licensed programming for a soccer event at his establishment. Dkt. No. 1. Mr. Huaman failed to appear, and the Clerk of the Court entered his default. Dkt. No. 9.

ISM now moves for default judgment. Dkt. No. 12. This Court heard the matter on March 21, 2023. Dkt. No. 18. Pursuant to the Court's order, ISM submitted a supplemental declaration on April 28, 2023. Dkt. Nos. 19, 20.

Although the record demonstrates that ISM served its motion papers (and subsequent notices) on Mr. Huaman (*see* Dkt. No. 12 at 4, 18; Dkt. No. 14; Dkt. No. 17; Dkt. No. 20 at 4), Mr. Huaman did not respond to the motion for default judgment. Nor did he appear at the March 21, 2023 hearing. *See* Dkt. No. 18.[1]

ISM has consented to proceed before a magistrate judge. Dkt. No. 6. However, Mr.

---

[1] At the hearing, ISM's counsel confirmed that he has not had any contact from Mr. Huaman.

1   Huaman has not appeared and is in default. This Court therefore does not have the consent of all
2   parties. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *Williams v. King*, 875 F.3d 500 (9th Cir.
3   2017). Accordingly, the Court directs the Clerk of the Court to reassign this action to a district
4   judge, with the following report and recommendation that ISM's motion for default judgment be
5   granted in part and denied in part.

**REPORT AND RECOMMENDATION**

**I.   BACKGROUND**

According to the complaint, ISM is a closed-circuit distributor of sports and entertainment programming. Dkt. No. 1 ¶ 16. It purchased the exclusive domestic commercial rights to broadcast the *Peru v. Bolivia Soccer Match* event, including all interviews and game commentary, telecast nationwide on Sunday, October 10, 2021 ("Program"). *Id.*; *see also* Dkt. No. 12-3 ¶¶ 3, 4 & Ex. 1. ISM entered into agreements with sub-licensees permitting them to publicly broadcast the Program within their respective commercial establishments for a fee. Dkt. No. 1 ¶ 17; *see also* Dkt. No. 12-3 ¶ 8. ISM states that the Program was legally available to commercial establishments, including in California, only through a license agreement with ISM. Dkt. No. 1 ¶ 18; Dkt. No. 12-3 ¶ 3.

Mr. Huaman is alleged to be "an owner, and/or operator, and/or licensee, and/or permittee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Jess's Place, operating at 3088 Monterey Highway, San Jose, CA 95111." Dkt. No. 1 ¶ 7. The complaint further alleges that at all relevant times, including on October 10, 2021, Mr. Huaman "was specifically identified as Primary Owner and Licensee on the California Department of Alcoholic Beverage Control License (327382) issued to Jess's Place." *Id.* ¶ 8.

An investigator, Mario Galvez, visited Jess's Place on October 10, 2021 and later averred in a sworn affidavit, that he observed the unlawful exhibition of the Program on the one television screen at that establishment. *See* Dkt. No. 12-2; *see also* Dkt. No. 20. Mr. Galvez was not required to pay a cover charge to enter Jess's Place. He estimates that Jess's Place has a capacity of approximately 40 people. During the thirteen minutes he was there, Mr. Galvez conducted

2

1  three head counts, noting that there were 20 patrons present each time. Mr. Galvez does not
2  indicate how many of those patrons were actually watching the Program. *See* Dkt. No. 12-2. ISM
3  does not allege that Jess's Place increased food or drink prices during the Program. Nor is there
4  any allegation or evidence that Mr. Huaman is a repeat offender who has committed the alleged
5  unlawful conduct on other occasions. *See generally* Dkt. No. 1. Based on Mr. Galvez's
6  observations, ISM alleges that Mr. Huaman intercepted the Program, "result[ing] in increased
7  profits for Jess's Place." *Id*. ¶ 13.

8  ISM filed the present action against Mr. Huaman on October 6, 2022. The complaint asserts claims for violation of the Federal Communications Act of 1934, 47 U.S.C. § 605 (claim 1); violation of the Cable & Television Consumer Protective and Competition Act of 1992, 47 U.S.C. § 553 (claim 2); common law conversion (claim 3); and violation of California Business and Professions Code § 17200 (claim 4). Dkt. No. 1 at 6-14. As noted above, Mr. Huaman failed to appear or otherwise respond to ISM's complaint. On November 11, 2022, ISM filed a request for entry of default as to Mr. Huaman, individually and doing business as Jess's Place. Dkt. No. 8. The Clerk of the Court entered his default on November 16, 2022. Dkt. No. 9. The Court subsequently ordered a status report and set a deadline for a motion for default judgment. Dkt. No. 10.

18  ISM filed the present motion for default judgment on January 12, 2023. Dkt. No. 12. ISM seeks judgment in its favor for violation of section 605 of the Federal Communications Act, including $3,000 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II) and $18,000 in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii). *See id*. at 3. ISM also requests damages for conversion in the amount of $550.00. *See id*.[2]

## II.   LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action.

---

[2] Acknowledging that it may not recover under both 47 U.S.C. § 605 and 47 U.S.C. § 553, ISM does not seek default judgment on its claim under § 553. *See* Dkt. No. 12-1 at 4; *see also J&J Sports Prods., Inc. v. Ro*, No. C 09-02860 WHA, 2010 WL 668065, at *3 (N.D. Cal. Feb. 19, 2010). Nor does ISM seek default judgment on its claim under California Business and Professions Code § 17200.

Fed. R. Civ. P. 55(a). After entry of default, a court may, in its discretion, enter default judgment. Fed. R. Civ. P. 55(b)(2);[3] *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to enter default judgment, a court may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). The court may hold a hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

## III.  DISCUSSION

### A.  Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

Federal question jurisdiction is based on ISM's claims under the Federal Communications Act of 1934, 47 U.S.C. § 605, and the Cable & Television Consumer Protection and Competition Act, 47 U.S.C. § 553. *See* 28 U.S.C. § 1331. The Court has supplemental jurisdiction over ISM's claims for conversion and for violation of the California Business and Professions Code § 17200, as they are based on the same operative facts such that they are all part of the same case or controversy. *See* 28 U.S.C. § 1367.

This Court is also satisfied that personal jurisdiction exists over Mr. Huaman. According to the complaint, Mr. Huaman resides and does business in this District. *See* Dkt. No. 1 ¶¶ 4, 7.

---

[3] "A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared." Fed. R. Civ. P. 55(b)(2). There are no such issues presented here. Nor is there any indication that Mr. Huaman is a person in military service. *See* Dkt. No. 12-4 ¶ 3.

4

*See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]") (internal quotations and citation omitted); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.").

### B. Service of Process

The record indicates that Mr. Huaman was personally served with process on October 19, 2022 (Dkt. No. 7). *See* Fed. R. Civ. P. 4(e)(A) (individual defendant may be served by delivering a copy of the summons and complaint to the individual personally); *see also* Cal. Code Civ. Proc. § 415.10 (individual defendant may be served by several means, including personal delivery of the summons and complaint to the individual).

### C. *Eitel* Factors

This Court finds that all but one of the seven *Eitel* factors weigh in favor of default judgment. With respect to the first factor, ISM would be prejudiced if the motion for default judgment were denied. ISM would likely be left without a remedy, in view of Mr. Huaman's failure to appear or otherwise defend this action. *See J & J Sports Prods., Inc. v. Salgadobarajas*, No. 5:13-cv-05557-BLF, 2014 WL 3053485, at *2 (N.D. Cal. July 3, 2014) ("In respect to the first factor of prejudice, denying Plaintiff's request for default judgment would be prejudicial because Plaintiff would be left without a remedy as a result of Defendant's refusal to litigate this action."). Additionally, the sum of money at stake (fourth factor) "is not so high as to weigh against granting judgment to the extent that damages are supported by evidence[.]" *Innovative Sports Mgmt., Inc. v. Valenzuela*, No. 19-cv-02785-JSW (JCS), 2021 WL 5238592, at *4 (N.D. Cal. Aug. 30, 2021); *cf. Salgadobarajas*, 2014 WL 3053485 at *2 (finding a request for maximum statutory damages weighed against default judgment where sum was disproportionate to the harm alleged). Moreover, there is no possibility of a dispute concerning material facts (fifth factor), as Mr. Huaman has not responded to the complaint or appeared in this action. Nor does it appear that his default was due to excusable neglect (sixth factor). The record reflects that he was personally

served with notice of this action, and was also given notice of ISM's present motion for default judgment. *See* Dkt. No. 7; Dkt. No. 12 at 4, 18; Dkt. No. 14; Dkt. No. 17. Although default judgment is disfavored (factor seven), Rule 55(b) permits entry of default judgment where a defendant refuses to participate in the litigation. *See Salgadobarajas*, 2014 WL 3053485 at *2. While the Court prefers to decide matters on the merits, Mr. Huaman's failure to participate in this litigation makes that impossible. *See United States v. Roof Guard Roofing Co., Inc.*, No. 17-cv-02592-NC, 2017 WL 6994215, at *3 (N.D. Cal. Dec. 14, 2017) ("When a properly adversarial search for the truth is rendered futile, default judgment is the appropriate outcome.").

Considering the merits of ISM's claims and the sufficiency of the complaint together (factors two and three), the Court focuses on ISM's federal claim under 27 U.S.C. § 605. Section 605, "prohibits the unauthorized interception, receipt, and use of 'radio communications,' including 'satellite television signal piracy.'" *G&G Closed Circuit Events, LLC v. Liu*, 45 F.4th 1113, 1116 (9th Cir. 2022) (quoting *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008)); *see also* 47 U.S.C. § 605(a). Thus, to establish liability under § 605, Mr. Huaman's display of the Program "must have been a 'radio communication' as it is defined under § 605 or otherwise involved a satellite television signal." *Id.* (citing *Webb*, 545 F.3d at 844). ISM's complaint alleges that the Program "originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies to [ISM]'s lawful sub-licensees." Dkt. No. 1 ¶ 20. The complaint further alleges that "Title 47 U.S.C. § 605(a), prohibits the unauthorized interception, receipt, publication and use of communications, including satellite television signals, such as the transmission of the Program for which [ISM] had the distribution rights thereto." *Id.* ¶ 24. ISM's complaint does not state whether Mr. Huaman intercepted the Program via a cable signal or via a satellite transmission. *See id.* ¶ 21 ("On Sunday, October 10, 2021, in violation of [ISM's] rights and federal law, [Mr. Huaman] intercepted, received and published the Program at Jess's Place."). Because ISM did not allege in its complaint that Mr. Huaman intercepted a satellite transmission (as opposed to a cable signal), it is not a factual allegation that can be taken as true. *See J&J Sports Prods., Inc. v. Segura*, No. 4:17-cv-05335-YGR (KAW), 2018 WL 1868271, at *3 (N.D. Cal. Apr. 19, 2018). During the motion hearing, ISM's counsel noted that photos submitted with

United States District Court
Northern District of California

1  Mr. Galvez's original affidavit purport to show the presence of a satellite dish.  The subject
2  photos, however, were not authenticated; and, in an interim order, the Court stated that it could not
3  determine where or when the photos were taken, or by whom, and what the photos purport to
4  depict.  *See* Dkt. No. 19.

5  With leave of court, ISM submitted a supplemental declaration from Mr. Galvez, who
6  avers that he took the subject photos on the day he visited Jess's Place and authenticates the
7  photos showing a satellite dish on the roof of the building where Jess's Place is located.  *See* Dkt.
8  Nos. 19, 20.  At the motion hearing, ISM could not exclude the possibility that the Program was
9  received or intercepted simultaneously from both a cable signal and a satellite broadcast.
10 Nevertheless, based on Mr. Galvez's photos and affidavit regarding the broadcast of the Program
11 at Jess's Place, the Court finds that ISM has a sufficient basis for a claim under § 605.  *See*
12 *Segura*, 2018 WL 1868271, at *3-*4 (finding that plaintiff stated a claim under § 605, based on a
13 supplemental declaration providing "authenticated photos of multiple satellite dishes affixed to the
14 roof of the restaurant, which were taken by the private investigator the day after the Program was
15 broadcast."), *report and recommendation adopted*, 2018 WL 2445293 (N.D. Cal. May 31, 2018);
16 *see also Webb*, 545 F.3d at 844 ("The law does not require direct evidence to support a factual
17 finding.  Circumstantial evidence may be sufficiently persuasive.").

18 With respect to ISM's conversion claim, courts disagree about whether the tort of
19 conversion applies to ISM's exclusive commercial distribution right and whether conversion
20 damages are impermissibly duplicative of statutory damages under § 605 or § 553.  *See G & G*
21 *Closed Circuit Events LLC v. Govan*, No. C 13-5488 SI, 2014 WL 2194520, at *2 (N.D. Cal. May
22 23, 2014) (citing cases).  Regardless of whether ISM's complaint sufficiently states a claim for
23 conversion, for the reasons discussed below, this Court finds that ISM's requested damages for
24 conversion are duplicative and unnecessary under the circumstances presented.

25 Accordingly, the Court finds that ISM is entitled to default judgment under § 605. The
26 Court further recommends that ISM's motion for default judgment be granted in the amount
27 discussed below.

28

**D.     Requested Relief**

Section 605 provides that an aggrieved party may elect an award of either actual or statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i). The statute allows for an award of statutory damages between $1,000 and $10,000 for each violation of § 605(a), as the court considers just. *Id*. § 605(e)(3)(C)(i)(II). At the Court's discretion, damages may be increased by not more than $100,000 for each violation of § 605(a), if the Court "finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage." *Id*. § 605(e)(3)(C)(ii).

ISM requests $3,000 in statutory damages and $18,000 in enhanced damages. *See* Dkt. No. 12 at 6. While there is no precise formula for calculating statutory damages under § 605, "[c]ourts in this district have taken various approaches, considering factors including whether the defendant was a repeat offender, use of cover charge, increase in food price during programming, presence of advertisement, number of patrons, number of televisions used, and impact of the offender's conduct on the claimant." *G&G Closed Circuit Events, LLC v. Omni Group Fin., Inc.*, No. 22-cv-02714-SI, 2023 WL 2456785, at *3 (N.D. Cal. Mar. 10, 2023) (internal quotations and citation omitted). Here, Mr. Galvez states that the Program was being shown on the one television screen at Jess's Place, that there was no cover charge, and that Jess's Place was at about half-capacity during the time he was there. Dkt. No. 12-2. While ISM states that "unchecked activity of signal piracy" generally has caused the company to lose several millions of dollars of revenue (*see* Dkt. No. 12-3 ¶ 12-13), there are no allegations or evidence that Mr. Huaman is a repeat offender or that his conduct on this occasion caused ISM to lose significant revenue. Nor are there any allegations or evidence of any advertising or promotion of the Program, or that food or beverage prices were increased during the broadcast. ISM states that the cost of a license for an establishment the size of Jess's Place would have been $550.00. *See* Dkt. No. 12-3 ¶ 8 & Ex. 3. Under these circumstances, this Court finds that an award of statutory damages of $1,100, i.e., twice the amount Mr. Huaman would have been required to pay for a license, sufficiently serves the purposes of compensation for ISM and deterrence of future misconduct.

The Court finds that enhanced damages are not warranted. As noted above, § 605 permits an award of enhanced damages up to $100,000 if the violation "was committed willfully and for

purposes of direct or indirect commercial advantage or private financial gain[.]" 47 U.S.C. § 605(e)(3)(C)(ii). "The statute is conjunctive and therefore the Plaintiff must provide the Court with sufficient evidence to support a finding that Defendant acted both willfully and for the purpose of obtaining direct or indirect commercial advantage or private financial gain." *Salgadobarajas*, 2014 WL 3053485 at *4. ISM emphasizes that interception of the Program could not have been mistaken, accidental, or inadvertent (*see* Dkt. No. 12-3 ¶¶ 9-11), and the Court is persuaded that the alleged interception of the Program is the result of a deliberate act. However, ISM's allegations that the broadcast of the Program "resulted in increased profits for Jess's Place" (*see* Dkt. No. 1 ¶ 13) are entirely conclusory. As discussed above, there is no evidence that Mr. Huaman advertised or promoted the broadcast of the Program, required a cover charge, or charged a premium for food and beverages on the date of the broadcast. Courts in this district have declined to award enhanced damages, absent evidence that the establishment actually profited from the violation, or that there was repeated or egregious wrongdoing. *See, e.g., G&G Closed Circuit Events, LLC v. Zapata*, No. 5:18-cv-01103-EJD, 2019 WL 3891219, at *1 (N.D. Cal. Aug. 19, 2019) (declining to award enhanced damages absent evidence that defendant advertised the broadcast of the program, required a cover charge, or charged a premium for food and drinks on the date of the broadcast); *Salgadobarajas*, 2014 WL 3053485 at *4 ("The Court will not consider awarding enhanced damages until Defendant becomes a repeat offender or willfully and egregiously violates the Federal Communications Act."); *Govan*, 2014 WL 2194520 at *2 (declining to award enhanced damages where "the record is unclear on whether the [defendant] actually profited from the violation" and where there was no evidence that defendant was a repeat offender or advertised the subject program prior to broadcast). *Cf. Segura*, 2018 WL 1868271 at *6-*7 (awarding enhanced damages where the record demonstrated defendant's affirmative misconduct and repeat offender status). Accordingly, the Court recommends that ISM's request for $18,000 in enhanced damages be denied.

    ISM also requests default judgment on its state law claim for conversion and damages in the amount of $550.00, representing the amount that Mr. Huaman would have been required to pay for a licensing fee. Even assuming, without deciding, that ISM is entitled to default judgment

on its conversion claim, the Court finds that the statutory damages in the amount of $1,100 sufficiently compensates ISM and that this case does not present circumstances where an additional award would be justified. *See Govan*, 2014 WL 2194520 at *2.

ISM also requests an award of its attorney's fees and costs. Under § 605, a prevailing party is entitled to recover full costs and reasonable attorney's fees. 47 U.S.C. § 605(e)(3)(B)(iii). As ISM has not yet provided an accounting of its attorneys' fees or costs, and assuming the newly assigned judge concludes that ISM is entitled to default judgment under § 605, this Court recommends that ISM be ordered to file a motion for an award of attorneys' fees and costs within 14 days of the district judge's order. At the district court's discretion, ISM's request for an award of attorneys' fees and costs may be referred to the undersigned for a further report and recommendation.

## IV.   CONCLUSION

Because not all parties have consented to the this Court's jurisdiction, it is ordered that this case be reassigned to a district judge. For the reasons discussed above, it is recommended that the newly assigned district judge grant ISM's motion for default judgment as to the claim under 47 U.S.C. § 605 and award statutory damages of $1,100. Assuming that the newly assigned district judge concludes that ISM is entitled to default judgment under § 605, ISM should be directed to file a motion for an award of attorney's fees and costs, as discussed above, within 14 days after the district judge's ruling on the present report and recommendation.

ISM shall promptly serve Mr. Huaman with this report and recommendation and file a proof of service with the Court. Any party may serve and file objections to this report and recommendation within 14 days after being served. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Civ. LR. 72-3.

**IT IS SO ORDERED.**

Dated: May 1, 2023

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge

10